# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:16-po-08143-MKD |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| vs. | |
| KURT W. BRAIN, | |
| Defendant. | |

This matter came before the undersigned magistrate judge for a bench trial on April 21, 2017. Legal intern, Courtney Hall, supervised by Assistant United States Attorney Meghan McCalla, appeared on behalf of the United States. Troy Lee appeared on behalf of Defendant Kurt W. Brain.

Defendant was charged by Violation Notice with hunting migratory game birds by the aid of bait in violation of 50 C.F.R. § 20.21(i). At the trial, the United States offered testimony from U.S. Fish and Wildlife Services Officer Brent Scherzinger and Kittitas County Sheriff's Office Deputy Ben Kokjer. Defendant offered testimony from Don Caraway. Defendant also testified. The Court

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

admitted Exhibits 1-4, 6-27, and 29, which were photographic and video exhibits depicting the relevant physical area on December 5, 2015. The Court admitted Defendant's Exhibit 100 for demonstrative purposes. Based on the testimony and evidence admitted, the Court finds Defendant Kurt W. Brain GUILTY of the cited offense, and makes the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

1. On December 5, 2015, Defendant Kurt W. Brain, Don Caraway, Kenneth Caraway, and a fourth man (first name Tim) were hunting geese on the Caraway brothers' family property, in the area of 1315 West Dolarway Road in Ellensburg, Washington, which is located in the Eastern District of Washington.

2. Around 6:30 a.m., shortly before daylight, Defendant, Don Caraway, and Kenneth Caraway set up approximately nine dozen goose decoys in the field behind the house.

3. After setting up the decoys, the hunters sought shelter from the cold in a building to keep warm by a stove until close to daylight.

4. At or shortly before 7:15 a.m., the hunters took position in a hunting blind on the Caraway's property. The purpose of a hunting blind is to shield hunters from view of game; hunting blinds are routinely used when hunting geese. The hunting blind was situated amongst the goose decoys.

5. After arriving at the hunting blind, the individuals began hunting. Defendant and Don Caraway left the hunting blind to retrieve geese they had shot from the field.

6. Someone made a trespassing/weapons complaint regarding the hunting activity on the Caraways' property. U.S. Fish and Wildlife Service Officer Brent Scherzinger, Kittitas County Deputy Ben Kokjer and Kittitas County Reserve Officer Jordal responded to the complaint.

7. When he responded to the area, Officer Scherzinger observed three individuals in a hunting blind on the property.

8. Between approximately 8:45 and 9:00 a.m., Officer Scherzinger, Deputy Kokjer and Reserve Officer Jordal met at the house on the property, then walked across the hunting field toward the hunting blind. At the time the officers responded, it was lightly snowing.

9. To get to the hunting blind, the officers walked across the hunting field approximately 100 to 150 yards. In doing so, they passed several groups of goose decoys.

10. Officer Scherzinger noticed that grain was spread across the snow in the field on both sides of the fence. Some of the goose decoys were positioned over the grain, with their necks bent down to appear as if they were eating the grain.

11. The grain was scattered throughout the field. There were some concentrated areas or patches, as well as less concentrated areas where grain was scattered. The grain was located on top of the snow.

12. One of the concentrated areas of grain was approximately eight to ten feet from top to bottom and ten feet from side to side. This particular area of grain was located approximately ten yards from the hunting blind. It was visible from a significant distance and was readily visible from the hunting blind.

13. When positioned in the hunting blind, the hunters were facing the direction of the patch of grain that was ten yards from the blind.

14. The officers contacted three men at the hunting blind, including Defendant. At the initial contact, Defendant stated he was hunting coyotes. Later, after additional questioning, Defendant admitted he was hunting geese.

15. Officer Scherzinger determined that Defendant had a valid hunting license that covered both geese and coyotes, among other small game and water fowl.

16. In the hunting blind, the officers found several dead geese.

17. Officer Scherzinger observed boot tracks in the snow throughout the field, including adjacent to and through the exposed grain.

18. Officer Scherzinger issued Defendant a citation for violating 50 C.F.R.

§ 20.21(i), taking migratory game birds with the aid of bait.

## CONCLUSIONS OF LAW

### A. The Charge

Defendant is charged with taking migratory game birds by the aid of bait in violation of 50 C.F.R. § 25.21, which provides in relevant part:

> Migratory birds on which open seasons are prescribed in this part may be taken by any method except those prohibited in this section. No persons shall take migratory game birds: … (i) By the aid of baiting, or on or over any baited area, where a person knows or reasonably should know that the area is or has been baited.

50 C.F.R. § 25.21(i).

### B. The Elements

To find Defendant guilty, the Court must find that the United States proved each of the following elements beyond a reasonable doubt:

1. Defendant took or attempted to take at least one migratory game bird;

2. That Defendant did so on or over a baited area; and

3. That Defendant knew or reasonably should have known that the area was baited.

50 C.F.R. § 20.21(i).

**C. The Standard for Knew or Reasonably Should Have Known Under 50 C.F.R. § 20.21(i)**

In pretrial briefing, the United States urged the Court to apply the Fifth Circuit's interpretation of Section 20.21(i), which holds that a hunter knew or reasonably should have known that he was hunting over a baited area if the presence of bait could reasonably have been ascertained by a hunter wishing to check the area for illegal devices. *United States v. Lee,* 217 F.3d 284, 288-89 (5th Cir. 2000); ECF No. 31 at 3-4. This standard is somewhat akin to placing a burden on hunters to reasonably inspect the area to be hunted. *Lee,* 217 F.3d at 289. The United States contends that the 1998 amendment to the Migratory Bird Treaty Act which added the "knew or should have known" language also incorporated the standard set forth by the Fifth Circuit. ECF No. 31 at 3. *Lee,* however, was not decided until after the 1998 amendment, and it interpreted the statute as it read in 1997, when the facts of that case arose. Therefore, the Court finds no clear congressional intent that the meaning of "knew or should have known" in 50 C.F.R. § 20.21(i) requires a hunter to make an inspection of the area to be hunted for bait. The Ninth Circuit has not interpreted this element of 50 C.F.R. § 20.21(i). The Court declines to adopt the Fifth Circuit standard. Instead, as the Court informed the parties at the pretrial conference, the Court will apply the plain meaning of "knew or should have known" to the language in 50 C.F.R. § 20.21(i).

**D. Findings**

**1. Defendant Took or Attempted to Take Migratory Game Birds**

The evidence established that Defendant took and attempted to take migratory game birds. Under the statute, geese are classified as migratory game birds. *See* 50 C.F.R. § 20.12; 50 C.F.R. § 12.11(a)(1). Officer Scherzinger testified that on December 5, 2015, Defendant was contacted in a hunting blind that contained dead geese. The circumstances were indicative of hunting of geese, including the use of a hunting blind, the use of goose decoys, the presence of shotguns, and the presence of bait, specifically grain. After initially denying he was hunting geese, Defendant subsequently admitted to Officer Scherzinger that Defendant was in fact hunting geese. Finally, in his trial testimony, Defendant admitted that he was hunting geese on December 5, 2015. The Court finds the United States proved this element beyond a reasonable doubt.

**2. Defendant Was Hunting Over a Baited Area**

The evidence established that Defendant was hunting over a baited area. The statute defines "baited area" as "any area on which salt, grain, or other feed could serve as a lure or attraction for migratory birds to, on, or over areas where hunters are attempting to take them." 50 C.R.F. § 20.11(j). There was significant evidence that grain was spread over the area in which Defendant was hunting. Officer Scherzinger testified that there was a substantial amount of grain spread

throughout the field, including grain near and under many of the decoys. The photographic and video evidence established that there was grain in the hunting field amongst the decoys and specifically near the blind. Don Caraway testified at trial to the presence of grain in the hunting area when the officers arrived on the morning of December 5, 2015. The Court finds the United States proved this element beyond a reasonable doubt.

### 3. Defendant Knew or Reasonably Should Have Known He Was Hunting Over a Baited Area

The Court concludes that Defendant knew and reasonably should have known that he was hunting over a baited area. First, the quantity of grain indicates Defendant knew or reasonably should have known of its presence. The testimony and photographic evidence showed there were concentrated areas of grain in the hunting field, between the house and the hunting blind. One specific patch was large in size. Specifically, the patch of grain closest to the hunting blind was approximately eight to ten feet from top to bottom and approximately ten feet from side to side.

Second, the location of the grain and close proximity to the hunting blind contributes to the finding Defendant knew or reasonably should have known of its presence. Specifically, the largest section of grain (eight to ten feet high and ten feet across) was located approximately ten yards from the hunting blind, where the hunters had been hiding. This specific section was readily visible from the blind.

Moreover, Defendant testified that when in the hunting blind, he was facing this specific section of grain because that is the direction from where the geese flew. From the photographic and video evidence, it is clear that there was no grass or other obstruction concealing this grain; it was laying on top of the snow directly in front of the blind.

Defendant argues that Deputy Kokjer's failure to notice the grain when he approached the hunting blind supports a finding that Defendant was not reasonably expected to be aware of the grain. However, Deputy Kokjer, a law enforcement officer, was not in the same situation as Defendant, a hunter. The Court is persuaded by Deputy Kokjer's explanation that when he approached the hunting group, he focused his attention on the hunters as they were in possession of weapons and he was responding to a weapons complaint. Moreover, Deputy Kokjer explained that he had an inexperienced reserve officer with him. Deputy Kokjer was focusing on the safety of the encounter and not on the surrounding details such as the substance on the ground. Moreover, he testified that after he made the initial encounter, the grain's presence was obvious to him.

Third, Defendant's movements to and from the blind exposed him to the presence of the grain. Defendant initially was in the field placing the decoys. He subsequently traversed the field in order to enter the hunting blind. Then, after the hunters shot geese, Defendant left the hunting blind and retrieved the dead geese

from the hunting field. Based on the photographic evidence, it would be nearly impossible to leave the hunting blind to traverse the hunting field and not encounter grain.

Fourth, when initially contacted by law enforcement, Defendant denied he was hunting geese and stated he was hunting coyotes. Only after being further questioned by Officer Scherzinger did Defendant subsequently admit he was hunting geese. The Court finds Defendant's false statement to the officer to be indicative of a consciousness of guilt in that he did not initially disclose he was hunting geese because he knew they were doing something improper.

Defense counsel sought to undermine the evidence regarding knowledge, arguing that Defendant did not know that grain was present because it was placed in the field several days prior to hunting and covered by snow when he arrived; that when he was walking the field to place decoys, it was too dark to see the ground well; and, in the intervening hours between when they started hunting and when the officers arrived, enough snow had melted to expose the previously hidden grain. These arguments are unpersuasive.

The Court is not persuaded that the grain was initially covered by snow and thus not visible early on December 5, 2015, and then became exposed only when the snow melted. This assertion is inconsistent with the testimony and the photographic evidence. Defendant testified about the temperature conditions on

the morning of December 5, 2015. He testified that it was cold enough outside that after setting up the decoys, the four hunters returned to a building to warm themselves by a stove. He also testified that in the hunting blind, he was wearing gloves and a full head covering to stay warm. Officer Scherzinger testified that it was snowing when he arrived on the scene. Finally, video evidence from December 5, 2015 shows that it was still snowing after the officers arrived on the scene. If it was snowing when the officers arrived, it could not have been warm enough for snow to melt and expose the grain. Additionally, the photographs show that the grain is sitting on top of the snow, which is inconsistent with the theory of exposure occurring due to snow melt. It is not logical that the temperature was warm enough to melt sufficient snow to uncover previously covered grain by the time the law enforcement officers arrived around 9:00 a.m.

Next, Defendant argued that visibility was reduced on the morning of December 5, 2015 due to fog and snow. He argued that the reduced visibility impeded his ability to see that the area he was hunting was baited. However this argument is inconsistent with the officer's testimony, Defendant's own testimony, and the photographic and video evidence. Officer Scherzinger testified that he could see several hundred yards easily. Moreover, Defendant testified that he could see the geese flying over the property from about half a mile away. Additionally, he testified that Don Caraway was able to see an injured goose in the

field about half a mile away.  Finally, the pictures and video taken on December 5, 2015 do not show any visibility challenges that would preclude one from seeing the grain on the ground.  These assertions cast doubt on the Defendant's claim that visibility conditions were poor enough to impede his ability to see grain approximately ten yards from the hunting blind or at his feet as he was retrieving dead geese from the hunting field.

Don Caraway testified that he placed the grain in the field approximately three to ten days prior to December 5, 2015.  Mr. Caraway explained that he disposed of 45 pigeons in the hunting field.  After disposing of the pigeons, he cleaned out the back of his truck by kicking all the grain onto the field.  The Court finds this testimony inconsistent with the manner in which the grain was dispersed across the field.  The grain was located across the field in various locations, not all in one place.

The Court finds that the United States proved beyond a reasonable doubt that Defendant knew and reasonably should have known that he was hunting over a baited area.

**IT IS ORDERED:**

The Court finds Defendant, Kurt W. Brain, **GUILTY** of the offense of taking migratory game birds by the aid of bait, in violation of 50 C.F.R. § 20.21(i), as charged in the citation.

DATED May 9, 2017.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE